THE DANCEY-DAVIS PRESS, INC., Appellant, *v.* AMERICAN FASHION COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, December, 1922, Term — Filed January, 1923.

Contracts — printing and binding magazines — delivery of insufficient quantity — counterclaim — error in dismissing complaint on ground that contracts were entire.

In an action to recover a balance due for work, labor and services, materials furnished and moneys expended in printing and binding two magazines, issued monthly, the plaintiff's demand was based on the number of copies of the periodicals actually delivered to and disposed of by defendant. The testimony showed that though the defendant before receiving plaintiff's bill had complained of a shortage in delivery it subsequently paid the bill, deducting the amount of the counterclaim for its alleged loss due to the shortage, but there was no evidence tending to show that plaintiff's right to compensation for the magazines delivered was dependent upon the delivery of the entire order. *Held,* that the dismissal of the complaint upon the ground that the contract was entire and that plaintiff had not showed complete performance on its part was reversible error.

Judgment dismissing both the complaint and the counterclaim reversed and a new trial ordered.

MULLAN, J., dissenting.

APPEAL by the plaintiff from judgment of the Municipal Court of the city of New York, borough of Manhattan, fifth district, dismissing the complaint and counterclaim of defendant.

*Milton Dammann* (*David Michelsohn*, of counsel), for appellant.

*Herman B. Goodstein* (*Thomas J. Kavanagh*, of counsel), for respondent.

GUY, J. The action is to recover a balance of $826.95 for " work, labor and services and materials rendered and moneys laid out and expended " in printing and binding the defendant's magazines *Les Parisiennes* and *Style*. Defendant counterclaimed for " damages sustained by the defendant by reason of a shortage in delivery of the October issue of *Style* 465 copies at 35c per copy, totalling $153.45. Damages sustained by the defendant by reason of a shortage in delivery of September issue of *Les Parisiennes* 449 copies at $1.50 per copy, totalling $673.50; " aggregating $826.95.

The defendant kept with the plaintiff a stock of paper sufficient to print about three months' issues of the periodicals, and plaintiff used that paper, the title of which was in defendant, plaintiff furnishing all labor, ink, colors, etc. Defendant gave to plaintiff a written order to " Print 5M *Les Parisiennes*, September, deliver to trade bindery not later than — Rush." Plaintiff agreed to do the printing necessary to make up a magazine of twenty-six pages, of which ten pages were reading matter, printed on both sides, and sixteen pages were lithographed plates printed on one side (*i. e.*, eight pictures), and also to prepare and bind the covers. The reading matter sheets were entirely prepared by plaintiff, the covers and plates were printed in outline black, and these eight leaves of plates and two leaves of cover were then delivered to defendant's lithographer, employed and paid by defendant. These colored sheets were then sent by defendant's lithographer direct to the bindery, which was employed and paid by plaintiff. The reading matter sheets were sent by plaintiff to the bindery, and the bindery assembled the two lots and bound them, delivery being made direct to defendant from the bindery. It seems that there was an agreement that plaintiff should use enough of the paper to provide for spoilage, which was allowed at about four per cent. Plaintiff prepared 5,150 copies of the magazine and sent the reading part to the bindery, the plates and covers to the lithographer. The lithographer printed in colors 5,150 and sent them to the bindery. The counting was done by a machine, and there is nothing to impugn the count. The plates were placed in packing cases as they came off the lithographing press, the cases were nailed up and

sent to the bindery and placed in the room alongside the folding tables. The magazines were hand folded. When 4,501 had been folded there were no more plates. The assembling and binding were done in another room. As soon as the binding of a sufficient number was completed that lot, less than the 5,000 ordered, was sent to defendant who, not knowing that there was a shortage, received them. No one knew there was a shortage until after the last plates were bound, and the reading matter sheets were found as surplus for which there were no plates. It was then too late to furnish more plates.

Exactly the same contract was entered into with reference to *Style* except for quantity — 35,000 were to be delivered to defendant. Plaintiff made up 35,350 copies, sent them to the lithographer, and the lithographer printed 35,053, and sent them to the bindery. Those were folded on a machine and when the last plate was folded the machine registered 34,535 which were bound and delivered in lots. The shortage was not discovered until the surplus of printed sheets was noticed. What became of the missing plates is not shown.

Plaintiff's demand is based on the number of copies of the periodicals actually delivered to and disposed of by defendant. The court below found that all the witnesses were truthful, and there is neither claim nor basis for a claim that plaintiff was negligent. The complaint was dismissed for the reason that the contracts were entire, and plaintiff had not delivered the entire number, and the counterclaim was also dismissed.

In holding that the contracts were entire and that plaintiff, therefore, could not recover because complete performance on its part was not shown, the trial judge resorted to doctrine which in recent years has been substantially modified by the legislature. Under the Sales of Goods Act (Pers. Prop. Law, § 125, subd. 1) delivery of an insufficient quantity of goods under a contract does not where they are accepted by the buyer excuse him from paying for the fair value of the goods actually received. *Portfolio* v. *Rubin*, 233 N. Y. 439. The acts of the parties in this case, however, do not seem to come within the scope of the statute referred to, and I will assume that the controversy must be disposed of upon common-law principles.

There is no evidence in the case showing that plaintiff's right to compensation for the magazines delivered was dependent upon delivery of the entire order. Indeed the testimony shows that before receiving plaintiff's bill defendant complained of the shortage, and that defendant subsequently paid the bill, deducting therefrom the amount counterclaimed herein for defendant's alleged loss due

to the shortage. It is thus indicated that literal performance by plaintiff was not a condition precedent to compensation; and if there was a condition that all of the periodicals ordered should be delivered before defendant would be liable to pay for the copies actually delivered, such condition was apparently waived by defendant's payment and claim for damages. *Avery* v. *Willson*, 81 N. Y. 341; *Ming* v. *Corbin*, 142 id. 334.

It follows that it was error for the trial judge to dismiss the complaint, and the judgment must be reversed and a new trial ordered, with thirty dollars costs to the appellant to abide the event.

GAVEGAN, J., concurs in result in opinion; MULLAN, J., dissents in opinion.

GAVEGAN, J. (concurring). The evidence indicated that all parties must have known defendant was in the habit of shipping the magazines out as they were received, which is hardly consistent with the position that, according to the intention of the parties, defendant was not obligated to pay for any unless it received all. Again, the four per cent margin for spoilage was insufficient to *safely* meet the probable loss in all three operations. A shortage might result in any month. It is not reasonable to suppose that, under the circumstances, it was contemplated that the plaintiff might lose its entire compensation if, on account of such narrow margin for spoilage and through no fault on its part, it failed to deliver the number of copies ordered. Furthermore, defendant allowed the theory of its position to remain obscured until near the end of the trial, with resulting confusion to court and counsel and with, apparently, undue advantage to itself. For these reasons and not because this might be regarded as a hard case in which to apply the law, I believe there should be a new trial.

I vote for reversal.

MULLAN, J. (dissenting). I dissent. The facts may justify a temptation to ignore the doctrine of *stare decisis* and decide in plaintiff's favor, but the law, as I see it, is clearly with the defendant. This was essentially a work, labor and services case, the contract was entire, the plaintiff did not fully perform, and, under one of the most elementary of the rules of law, it cannot recover for what it did do. There was no waiver to bring the case within the doctrine of *Avery* v. *Willson, supra*. The rigor of the old rule in the sales cases, denying recovery for partial performance (*Catlin* v. *Tobias*, 26 N. Y. 217), has been ameliorated, in certain situations, by the Sales Act, but we cannot usurp legislative power and extend the scope of the statute to transactions that are not

sales. Nor is this, in my opinion, a proper case for the application of the doctrine of substantial performance. However harshly the rule of law that seems to me to be applicable to the facts here may appear to work in this case, I think we should not hesitate to apply it. Bad law is made by attempting to extricate particular litigants from particular difficulties. If a well-settled rule of law seems not always to work justice, the remedy lies with the legislature. Where conditions of life have changed, courts may and should change their doctrines to *meet and accord with the altered conditions;* but, otherwise, departure from fundamental rules leads to confusion worse confounded, so that no man can know how to regulate his conduct.

I vote for affirmance.

Judgment reversed.